JOY COSSICH LOBRANO, Judge.
| j Plaintiffs, Robert and Stephanie Biller, appeal a trial court judgment dismissing their suit against defendant, Snug Harbor Jazz Bistro of Louisiana, L.L.C. (“Snug Harbor, L.L.C.”). For the reasons that follow, we affirm the judgment.
*731 In April 2007, George Edgar Brumat (“Mr. Brumat”) was the sole proprietor of Snug Harbor Jazz Bistro of New Orleans (“Snug Harbor”), a restaurant, bar and music club located at 626 Frenchmen Street. Mr. Brumat had leased the 626 Frenchmen Street building from its owner, C. Jason Patterson (“Mr. Patterson”), pursuant to a commercial lease executed on December 8, 2006.[1] At the time, Mr. Bru-mat employed Wesley J. Schmidt (“Mr. Schmidt”) as Snug Harbor’s office manager. Mr. Schmidt’s duties included bookkeeping, purchasing, and doing payroll.
On July 7, 2007, Mr. Brumat died testate. Pursuant to his last will and testament, Mr. Brumat bequeathed all of his property, except a piano, to his niece, 12Luana Brumat (“Ms. Brumat”), and appointed her as independent executrix of his estate.[2]
On September 20, 2007, Mr. Schmidt and Ms. Brumat formed and registered Snug Harbor, L.L.C., a limited liability company, with the Louisiana Secretary of State, listing themselves as its officers, Mr. Schmidt as its registered agent, and 926 Frenchmen Street, New Orleans, Louisiana, as its domicile and mailing address.
On March 12, 2008, Mr. Biller filed a petition for damages against Snug Harbor, L.L.C., and Snug Harbor, Inc.,[3] as a result of an accident that occurred at Snug Harbor in April 2007.[4] Shortly thereafter, he filed a first supplemental and amended petition that added Mrs. Biller as a plaintiff and named the Succession of George Edgar Brumat as the proper defendant.
Following a trial, the trial court rendered a judgment on October 28, 2009, against the Succession of George Edgar Brumat, awarding the Billers a total of $80,000.00. Seeking to enforce the judgment, the Billers filed a supplemental and amending petition, alleging that “[t]he business entity Snug Harbor has operated continuously before and after the death of its owner, George Edgar Brumat” and that “defendant [Snug Harbor, L.L.C.], is a successor [in] interest to the Succession |sof George Edgar Brumat” and “is liable for the debts of George Edgar Brumat in connection with the operation of the business entitled, Snug Harbor.”
Snug Harbor, L.L.C., answered the petition and raised peremptory exceptions of no cause of action and no right of action, arguing that Snug Harbor was a sole proprietorship that terminated upon the death of Mr. Brumat, and it (Snug Harbor, L.L.C.) was a limited liability company that was formed and registered with the Louisiana Secretary of State after Mr. Brumat’s death. Snug Harbor, L.L.C., further argued that it was not liable for the debts of the Succession of George Ed *732 gar Brumat because the succession never sold or transferred its ownership or interest in Snug Harbor to the limited liability company.
Following a trial on the issue of whether Snug Harbor, L.L.C., was a successor in interest to Snug Harbor, the trial court rendered a judgment, dismissing the plaintiffs’ claims against Snug Harbor, L.L.C. In written reasons for judgment, the trial court stated:
At the time of the accident, Mr. Brumat owned and operated [Snug Harbor] as a sole proprietorship. It was not until after Mr. Brumat’s death that [Snug Harbor, L.L.C.] even existed. Mr. Bil-ler was able to recover from the estate of Mr. Brumat, because the sole proprietorship and Mr. Brumat were basically one in the same. However, the proprietorship ceased with the death of Mr. Brumat. Ms. Brumat and Mr. Schmidt subsequently formed [Snug Harbor, L.L.C.] over two months later. Regardless though, of who the members are, [Snug Harbor, L.L.C.] is a completely separate entity from Mr. Brumat and his estate. [Sung Harbor, L.L.C.] was not in existence at the time of Mr. Bil-ler’s accident or Mr. Brumat’s death. The only proper party for Mr. Biller to recover in this matter is the Succession of George [Edgar] Brumat (from whom he has already obtained an $80,000.00 judgment).
14 On appeal, plaintiffs argue that the trial court erred in finding Snug Harbor, L.L.C., was not the successor in interest to Snug Harbor and not legally obligated to satisfy its debts. They contend the evidence presented at trial demonstrated that Snug Harbor, L.L.C., continued operating Snug Harbor as usual following Mr. Bru-mat’s death. Plaintiffs point out that Mr. Schmidt, Snug Harbor’s former office manager, was engaging in the same business at the same address, and had created Snug Harbor, L.L.C., from the good will and assets of Snug Harbor without payment therefore.
In support of their claim that Snug Harbor, L.L.C., is the “mere continuation” of Snug Harbor, plaintiffs cite Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789 (1916). In Wolff, the Louisiana Supreme Court held that a newly organized corporation would be liable as the successor of the old upon a showing that the transaction was entered into in fraud of the creditors of the old corporation or when the circumstances attending the creation of the new and its succession to the business and property of the old were of such a character as to warrant a finding the new corporation was merely a continuation of the old. Id. at 759, 70 So. at 794.
It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Foley v. Entergy La. Inc., 2006-0983, p. 10 (La.11/29/06); 946 So.2d 144, 153. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse. Id. at p. 10, 946 So.2d at 153.
15At the trial, Mr. Schmidt testified that he had been employed by Mr. Brumat as Snug Harbor’s office manager for several years, and he continued operating the restaurant and bar at that same location after his death. He explained that shortly after Mr. Brumat died, he and Ms. Brumat formed Snug Harbor, L.L.C., with each of them depositing $5,000.00 into the limited liability company’s checking account as “seed money.” Mr. Schmidt testified that *733 he ran the day-to-day operations of the business and received a salary and a percentage of the profits from the company, while Ms. Brumat, a resident of Italy, shared in the profits. Nonetheless, Mr. Schmidt explained that they communicated by phone and e-mail almost daily and, jointly, made all major business decisions, such as purchasing new equipment.
According to Mr. Schmidt, Snug Harbor, L.L.C., entered into a lease with the Succession of George Edgar Brumat, in December 2007, to lease the restaurant equipment for $926.00 per month for a term of one (1) year, commencing January 1, 2008.[5] That lease had been in effect for nearly a year when Mr. Schmidt learned that the United States Small Business Administration (SBA) was going to seize the equipment because either Mr. Brumat or his succession had defaulted on the loan.[6] Mr. Schmidt testified that the SBA intended to pick up the equipment but still had not done so, as of the date of the trial.
Regarding the 926 Frenchmen Street building, Mr. Schmidt testified that he, on behalf of Snug Harbor, L.L.C., had executed a new commercial lease with Mr. Patterson, on November 1, 2007, for a term of seven (7) years and one (1) month, to operate the restaurant, bar and music club.[7] He also obtained new city and state | fipermits and operating licenses in the name of the Snug Harbor, L.L.C. As to an acquisition of Snug Harbor, Mr. Schmidt explained that he neither personally nor on behalf of Snug Harbor, L.L.C., ever entered into any type of sale, assignment, or transfer agreement to acquire Snug Harbor and/or its assets from the Succession of George Edgar Brumat.
After reviewing the record, we find no error in the trial court’s conclusion that Snug Harbor, L.L.C., is a separate, distinct entity from the late Mr. Brumat and his estate, and therefore, not liable for the debts of the succession. The evidence supports the trial court’s finding that Snug Harbor, L.L.C., did not exist at the time of Mr. Biller’s accident and was formed after Mr. Brumat’s death. Although plaintiffs, in a post-argument reply brief, contend that Ms. Brumat, in her capacity as “the sole heir/administratrix” of the Succession of George Edgar Brumat, via a closed transaction, merged and/or transferred the “business of the Succession of [George E.] Brumat” into Snug Harbor, L.L.C., they have produced no evidence to support that claim. We also note that plaintiffs neither asserted nor offered evidence that Ms. Brumat and Mr. Schmidt formed Snug Harbor, L.L.C., with the intent to defraud any creditor(s) of the succession. Absent any evidence of fraud and considering the evidence before us, we find the trial court properly dismissed plaintiffs’ claims against Snug Harbor, L.L.C.
Accordingly, for the reasons herein, the judgment of the trial court in favor of Snug Harbor, L.L.C., is affirmed.
AFFIRMED

. Pursuant to the terms of the lease, the lease was to expire on November 18, 2014.

. The record indicates that on July 27, 2007, in conjunction with the Succession of George Edgar Brumat, Civil District Court, Orleans Parish, Division K-5, Docket No: 2007-6972, Ms. Brumat, a domiciliary of Rome, Italy, executed a general and special power of attorney pursuant to La. C.C.P. art. 3191, appointing Louisiana resident David Nelson Corkern to represent her in all acts of administration of the succession, including “performing all necessary acts involving the Succession’s asset known as [Snug Harbor].”

. Although the original petition and trial court judgment at issue refer to Snug Harbor, Inc., as a defendant, it neither owned nor operated Snug Harbor at the time of Mr. Biller’s accident.

. On April 13, 2007, plaintiffs and several friends went to Sung Harbor for dinner and to listen to jazz music. While they were dining, the chair in which Mr. Biller was seated collapsed. As a result, he sustained injuries to his right leg, back and shoulder.

. A copy of the equipment lease appears in the record as exhibit E to plaintiffs' opposition to Snug Harbor, L.L.C.'s exceptions of no right of action and no cause of action.

. Apparently, Mr. Brumat had obtained a SBA loan to buy new equipment to operate Snug Harbor after Hurricane Katrina. However, the loan documentation is not included in the record before us.

.Snug Harbor, L.L.C., offered the commercial lease into evidence at trial.