PAUL A. BONIN, Judge.
| iExercising our supervisory jurisdiction, we previously remanded this matter for a contradictory hearing and decision by the trial judge on a reasonable legal fee to be paid attorney Carolyn Gill-Jefferson for her expedited services rendered on behalf of the class counsel in connection with the court authorization of hundreds of minors’ settlements necessary to the disbursement of settlement funds. See Billieson v. City of New Orleans, unpub., 14-752 (La.App. 4 Cir. 3/9/15).
The trial judge complied with our remand instructions. She awarded Ms. Gill-Jefferson the amount of $457,500. Her fees, of course, are to be paid out of the legal fees previously awarded to and set aside for the other attorneys who represented plaintiffs in this class-action matter. Of those attorneys, only two, Gary Gambel and Jennifer Willis, have appealed the award. Despite the unsavory (and unnecessary) allegations by the appellants about the conduct of other attorneys as well as the-judge in this case, the central issue here is whether under all the circumstances the award to Ms. Gill-Jefferson is excessive.
| .¿Because the appellants have failed to establish that the tidal judge committed an error of law which would have interdicted her factual findings and conclusions, we have reviewed the award under an abuse-of-discretion standard, which is highly deferential to a trial judge’s view of the evidence. Thus, despite the apparently very high legal fee award, we cannot find under the peculiar circumstances of this case that the trial judge abused her discretion. Accordingly, we affirm the judgment. We explain our decision below.
I
In order to place the value of the services rendered by Ms. Gill-Jefferson in context, we briefly consider the long history of this class-action lawsuit. It began more than twenty years ago as a means to obtain compensation for public housing residents who were exposed to poisoning from lead-based paints. The matter proceeded along in relative quiet until about four years ago. At that tíme, the case seemed to be approaching resolution with the last of several multi-million dollar settlements. But, as the contests between the plaintiffs and the defendants receded, new contests among the plaintiffs’ attorneys, as well as contests between some of the plaintiffs’ attorneys and the trial judge ad hoc and his special masters, became dominant.
A tumultuous period followed, during which the ad hoc judge was replaced by the elected judge assigned to the case, who then replaced the original special masters. And then contests about fees charged and claimed by the former and replacement special masters erupted, the recusal of the substituted trial judge was |ssought, and on and on. From that time up until late 2013, it cannot be disputed that little progress was being made to remit the net settlement proceeds to the injured parties.
Then, at the end of the year in 2013, the focus momentarily turned to the recognition that the time had come for the plaintiffs to receive their compensation. But it was soon realized by the plaintiffs’ attorneys, the special masters, and the trial judge that no steps had been taken to prepare for and obtain the necessary court authorizations for more than three hundred minors who were entitled to receive settlements. See generally La. C.C.P. arts. 4031 et seq. (Tutorship proceedings). An ambitious plan was conceived to accom *789 plish the necessary legal work so as to, hopefully, deliver the settlement funds to the tutors without much further delay and to avoid the expected fall-out from some class members receiving their net settlements before others. According to class counsel Joseph M. Bruno, Sr., who testified at the contradictory hearing held on the matter of Ms. Gill-Jefferson’s fees, in other class-action proceedings those class members who needed tutorship and succession proceedings completed before distribution usually were the last to receive their individual awards:
Well, we didn’t volunteer to do it [ie. tutorship proceedings], and truthfully, you know, typically, we don’t do it. The Court — as I said, you know, I give great credit to the Court because the Court said, you know what, I don’t want to wait. The Court said I want this done before distribution, not after distribution. Because, typically, it happens after distribution.
So, first, honestly, we didn’t even, you know, we didn’t think about it because we typically don’t think about it. We are more focused on getting the money out to those who don’t have impediments.
|4You know, you have successions, you’ve got divorces, you’ve got all kinds of issues that get in the way of. the distribution of the checks, and, in the past, we will have an enormous protocol that the CADA [Court Appointed Disbursing Agent] is responsible for, so the CADA will normally say, you know, unless you can show me that you are the named class member, you don’t get a check. If you are — if the person is deceased, you do this. If you are underage, you do that. If there is a lien, you do something else again. So this was something. different, which I applaud, and I think was well, received by these children because the children were.the ones who were primarily impacted. ⅞ ⅜ ⅜
In Shell, we had — I only had about — I had 8,000 clients in Shell, and I guess, you know, 2,000 tutorships, which -I did for my clients. And those who didn’t have counsel, then-the committee had to figure out a way to get those children through. the tutorship process, but it typically happened after the fairness hearing and after everybody who had no impediments to payment were paid.
There is some considerable uncertainty in just how Ms. Gill-Jefferson came to be selected to accomplish the ’task. But there is no' uncertainty that all of the plaintiff attorneys,' including the appellants, were fully aware of her engagement and the work she performed. Notably, the appellants did not make any formal objection[1] or opposition to Ms. Gill-Jefferson’s engagement until after the trial judge had authorized payment to her from the funds reserved for the attorneys’ fees and not from the funds set aside for administrative expenses.[1] And at that point Ms. Gill-Jefferson had successfully rendered her services to the appellants’ clients on an expedited basis.
JLs.11
Before addressing the specifics of the appellants’ complaints about the amount of the fee awarded, we first address the factors that guide a trial judge in making an award and then address the standard by which we review such an award.
*790 A
“ The basic principle underlying the factors which guide a trial judge in determining a fee is reasonableness because “[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee ... ” Rule 1.5(a), Rules of Professional Conduct (emphasis added); State, Dept. of Transp. and Development v. Williamson, 597 So.2d 439, 442 (La.1992). The Supreme Court instructs that there are ten factors to be taken into consideration by a court in determining a reasonable fee: (1) the amount of money involved; (2) the ultimate result obtained; (3) the responsibility incurred; (4) the intricacies of the facts involved; (5) the importance of the litigation; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the diligence and skill of counsel;, (8) the extent and character of the work performed; (9) the number of appearances made; and (10) the court’s own knowledge. See id.[2] Notably, these factors, are derived from Rule 1.5(a) itself. See fid, n. 9.[3] These factors, importantly for our purposes here, are applied on a case-by-case basis. See Covington v. McNeese State University, 12-2182, p. 6 (La.5/7/13), 118 So.3d 343, 348.
B
On appellate review of a determination of an attorney fee, we first ensure that the trial judge adequately considered the ten factors and then, if we find that they were adequately considered, we review the award under an abuse-of-discretion standard. See id. Importantly, we decline to modify the award on appeal unless we are satisfied that the standard is met. See Borgnemouth Realty Co., Ltd. v. Parish of St. Bernard, 13-1651, p. 17 (La. App. 4 Cir. 5/21/14), 141 So.3d 891, 902. Our deference to the trial judge in these matters is a recognition of the trial judge’s greater familiarity with the issues involved in' the overall case and with the specific value of the services rendered by the attorney whose fee is under consideration.
HI
■ Mr. Gambel and Ms. Willis urge three assignments of error. Their first assignment of error is that the trial judge found as a fact that an agreement existed between the' plaintiffs’ attorneys and Ms. Gill-Jefferson for her to rénder services |7on behalf of the minor claimants and their tutors. Their second is that the fee is excessive. And their third is that the trial judge erréd in her factual finding that a fee of $1,500 for a tutorship proceeding is reasonable based upbn the fees charged in the legal community because, they argue, it is unsupported by the record.
We, however, focus on the central and dispositive issue in this case: did the trial judge abuse her discretion and award an unreasonable, excessive legal fee to Ms. Gill-Jefferson?
*791 A ■
We do not linger on the issue -of whether there is an agreement or binding contract entered into by Ms. Gill-Jefferson and the plaintiffs’ attorneys’ simply because the record clearly supports that all plaintiffs’ attorneys had actual knowledge of Ms. Gill-Jefferson’s engagément[4] to perform services on their behalf and, more importantly, none, including especially Mr, Gambel and Ms. Willis, objected to her engagement until after' Ms. Gill-Jefferson performed her work. Thus, the particulars of her engagement are inconsequential in determining whether the fee awarded is reasonable or excessive.
Similarly, we do not linger on the assignment pertaining to any finding about the customary charges for tutorship proceedings. That finding, in isolation, cannot support or defeat the legal fee award here. And it is subsumed trader the overall factors which must be considered. Whether (or not) $1,500 is a reasonable fee for a hypothetical tutorship proceeding does not illuminate the answer for our inquiry.
IsB
We turn now to the factors that the trial judge considered in making the award of a legal fee to Ms. Gill-Jefferson under the fact-specific circumstances of this case. Notably, the trial judge specified on the record that the “Williamson factors” governed her determination.
As we observed earlier, at a point in late 2013, the trial judge was in a position to finally authorize disbursements to the injured parties. But, because no steps had been taken to prepare, file, and obtain the necessary court-authorizations for disbursements of funds belonging to minors, there would likely be considerable fallout from the putative tutors when they learned that others would be receiving their 'disbursements. Testimony indicated that this major oversight was in no small measure due to dysfunction in leadership and cooperation among the plaintiffs’ attorneys, especially members designated' as class counsel. As Mr. Bruno noted: “Our relationship had, by that time, deteriorated to the point where no' one could rise and become the leader, and you need to have a quarterback. You have to have' a quarterback, and [Ms. Gill-Jefferson] served in that role.”
■ In order to remedy the problem, Ms-. Gill-Jefferson proposed an aggressive plan to close the gap in the time between disbursements to, on the one hand,.majors and those minors whose. net settlements did. not require a full tutorship proceeding, and, on .the other hand, the more than three hundred minors who required tutorship proceedings. See La. R.S.- 9:196. She summarized at trial, her plan of attack: “I proposed, first' of all, to meet with the. tutors -and undertutors- to collect their |9information and documents, prepare the necessary pleadings, meet with the tutors and undertutors to sign their verification, oaths of office, and their testimony affidavits, file the pleadings and present the affidavits to the Court for signature on the minor’s mortgage, and the letters of tutorship and actual recordation of the minor’s mortgage certificate.” The average disbursement to these minors ranged between $10,000 and $20,000. Thus, the effort involved expediting disbursements totaling between three million dollars and six million dollars. With respect to the first factor, there is no question that a considerable amount of money was involved. •
*792 The- trial court had already set aside from the gross settlements • the sum of more than twenty-six million • dollars to compensate the plaintiffs’ attorneys.[5] Of course, the attorneys’ fees were not earned until all the, class members (the clients) had received their .net settlements. And it is from this pool of set-aside fees that the trial judge awarded Ms. Gill-Jefferson a fee of $457,500. Notably, four other attorneys who served as special masters in this case, we have been reliably informed, have charged or .collected two million dollars paid or to be paid as administrative expenses. See Billieson v. City of New Orleans, unpub., 14-1006, p. 6, n. 7 (La.App. 4 Cir. 10/2/14).
With respect to the second factor, there is no dispute that the tutors received their disbursements expeditiously, which was a primary objective of Ms. Gill-Jeffersoh’s particular engagement. In fact, the tutorship pleadings were successfully completed and filed so expeditiously — most having been completed |inwithin several weeks of her retention — that the appellants argue that Ms. GiII-Jefferson?s efforts were unimportant. That, however, was not the view of the trial judge.
The appellant's ;also denigrate the responsibility incurred by Ms. Gill-Jefferson, which the third factor addresses, as well as the intricacies of the facts involved; which is the fourth factor. We first observe that Ms. Gill-Jefferson testified unequivocally that after she began her work none of the designated class counsel offered to take responsibility for any of the tutorships. And we, like--the trial judge, cannot overlook that Ms. Gill-Jefferson incurred considerable professional responsibility in undertaking the legal representation of so many minors and their legal representa-fives. For example, any inaccuracy in identifying the correct tutor and reviewing supporting documentation would obviously expose. Ms. Gill-Jefferson. to legal action both by the minor and the minor’s proper tutor. And it is highly unlikely that Ms. Gill-Jefferson will- not be receiving ongoing inquiries about these matters over many years to come. In fact, Ms.. Gill-Jefferson testified that she has already received inquiries concerning several of the minor’s mortgages that had been recorded. That is to say, her professional obligations did not terminate with recording the tutors’ mortgages , in the-property records.
As for the fourth factor, which, examines the matter’s factual intricacies, the appellants suggest that all of the 310 tutorships were routine and uncomplicated. Ms. Gill-Jefferson’s testimony, however, contradicts the appellants’contentions: “I disagree with that.... Each one had its own specifics, and there were none that In were alike.” Mr. Bruno, likewise,- disagreed: “It’s easy to say that one tutorship is a very easy thing to accomplish, but a class action is different, and I have said that for years and years and years,, and the reason why it’s different is because you are dealing with large numbers of people. And you are having to accomplish something within a very brief period of time.”
With respect to the fifth factor,’ the importance of the litigation, we recognize that Ms. Gill-Jefferson was not involved in the overarching task of litigating the class-action lawsuit. But her importance is found in the timing of her participation. Because the plaintiffs’ attorneys had — for whatever reasons — not timely undertaken to complete the tutorship tasks, we dis *793 count the appellants’ suggestion that the work performed by Ms. Gill-Jefferson was routine or assembly-like. We also discount, for similar reasons, the appellants’ efforts to diminish Ms. Gill-Jefferson’s legal knowledge, attainment, and skill, which is the sixth consideration, or their questioning of her diligence and skill, which is the seventh factor. Ms. Gill-Jefferson is a well-known former judge of the Civil District Court, a court of spécializ'ed civil jurisdiction. She taught civil law at the Mississippi College of Law between 2009 and 2012. And, after retiring from the bench, she has served as a mediator and court appointed special master in at least one other class-action case.
One of the reasons appellants offer for their trepidation in challenging Ms. Gill-Jefferson’s engagement (but not her fees) is her appointment by the Louisiana Supreme Court as judge pro tem in the same division which was overseeing the 11gclass-action matter. Obviously, in view of her long legal career, importantly including her years of service as a trial judge, it is clear that Ms. Gill-Jefferson was well-qualified to represent the minors and their tutors in this important undertaking. And, as we have already observed and commented, her diligence was exhibited in the expeditious way in which she brought these hundreds of tutorships to the point where the tutors could receive the minors’ funds without any further delay, and especially the delay occasioned by the lawyers themselves.
We feel especially impelled to defer to the trial judge with respect to the eighth factor, the extent and character of the work performed, and the ninth factor, number of appearances made, along with the tenth factor, the court’s own knowledge. In this case, these factors all relate to those aspects of Ms. Gill-Jefferson’s representation that. were observed and better understood by the trial judge. The trial judge has the appreciation for the urgency of the work performed by Ms. Gill-Jefferson that is necessarily lost to us some two years or more after the work was performed. We observe, however, that Ms. Gill-Jefferson documented her work and. introduced the entirety of her project-related emails and work, files on all 3.10 tutorship proceedings. At trial, she testified at length about the documents in her files and discussed in detail nine of the tutorship proceedings, some of which concerned plaintiffs who resided in other states. And while we are not as empowered or equipped to evaluate this evidence as is the trial judge, it clearly reflects a massive undertaking. As Mr. Bruno testified: “Trying to mobilize, organize and get this thing done was an enormous undertaking, and I know it — it’s |13easy to say aw, shucks, it’s just a tutorship, that’s like saying, aw shucks, it’s just a deposition in a class action. The implications are far more — the potential for harm is much, much higher, the degree of skill and energy that it takes to do it correctly are just different.” After some minor adjustments downward, the trial judge virtually approved the fee as sought by Ms. Gill-Jefferson. The fee was in line with Ms. Gill-Jefferson’s early proposal.
C
We do not set the attorneys’ fees in this matter unless we conclude that the trial judge abused her discretion. On our review, in light of the peculiar circumstances of this ease, including the capacious set-aside for fees for the attorneys representing the class members, from which Ms. Gill-Jefferson’s fee is deducted, we conclude, after considering, all the factors, that the fee is reasonable and does not shock the conscience. See Scott v. American Tobacco Co., Inc., 09-0461, p. 16 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046, 1056; San *794 chez v. City of Austin, 774 F.3d 873, 884 n. 8 (5th Cir.2014). The beneficiaries of Ms. Gill-Jefferson’s legal services — the minors, the tutors, and the other plaintiff attorneys — obtained an outcome that had theretofore eluded them. The fee awarded represents less than two percent of the funds set-aside for all attorneys’ fees in this class-action lawsuit. Because this case presents peculiar facts, most of which result in the magnification of the value of the services provided by Ms. Gill-Jefferson, we are unable to conclude that the trial judge abused her considerable discretion.
luDECREE
The judgment in favor of Carolyn Gill— Jefferson is affirmed. All costs of the appeal are taxed to Gary Gambel and Jennifer Willis' See La. C.C.P. art. 2Í64.
AFFIRMED

. There is evidence that appellants grumbled 'among themselves and their associates. Supposedly fearing that the trial judge would exact retribution on them when the time eame to award legal fees, the appellants claim that they did not object to Ms. Gill-Jefferson’s engagement with the trial judge out of self-interest. ,

. We have rearranged the numbering of the ten factors in order to align them with the order of oitr treatment of the factors in Part III-B, post.

. The Rule 1.5(a) factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed, or contingent.

. That there was an engagement of Ms. Gill-Jefferson was supported by the testimony of ‘ Joseph M. Bruno, Sr., a member of the plaintiffs' steering committee.

. The reasonableness of this fee set-aside is not before us and, so far as we know, has not been challenged.