| | | |
|---|---|---|
| HERO LANDS COMPANY, L.L.C. | * | NO. 2022-CA-0383 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| CHEVRON U.S.A. INC.; | | FOURTH CIRCUIT |
| TOTAL PETROCHEMICALS | * | |
| & REFINING USA, INC.; | | STATE OF LOUISIANA |
| PIONEER NATURAL | * * * * * * * | |
| RESOURCES, INC.; KEY | | |
| OPERATING & PRODUCTION | | |
| COMPANY, L.L.C.; KEY | | |
| EXPLORATION COMPANY; | | |
| WAGNER OIL COMPANY; | | |
| HILCORP ENERGY I, L.P.; | | |
| MANTI OPERATING | | |
| COMPANY; AND | | |
| HENDERSON OIL COMPANY, | | |
| INC. | | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-320, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge
Rachael D. Johnson)

James Richard Swanson
Harvey S. Bartlett, III
Lance C. McCardle
E. Blair Schilling
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue
Suite 4600
New Orleans, LA 70170-4600

Gladstone N. Jones, III
Bernard E. Boudreaux, Jr.
Kevin E. Huddell
Emma Elizabeth Antin Daschbach
John T. Arnold
JONES SWANSON HUDDELL DASCHBACH LLC
601 Poydras Street
Suite 2655
New Orleans, LA 70130

Stephen Jacob Braud
BALLAY, BRAUD & COLON, PLC
8114 Highway 23
Suite 101
Belle Chasse, LA 70037

      COUNSEL FOR PLAINTIFF/APPELLEE

Michael R. Phillips
Claire E. Juneau
Jeffrey J. Gelpi
KEAN MILLER LLP
909 Poydras Street
Suite 3600
New Orleans, LA 70112

L. Victor Gregoire, Jr.
Richard D. McConnell, Jr.
John C. Funderburk
KEAN MILLER LLP
400 Covention Street
Suite 700
Baton Rouge, LA 70802

Robert E. Meadows (pro hac vice)
Tracie J. Renfroe (pro hac vice)
Elizabeth R. Taber (pro hac vice)
Mitchell B. Bryant (pro hac vice)
KING & SPALDING, LLP
1100 Louisiana Street
Suite 4000
Houston, TX 77002

Martin A. Stern
Raymond P. Ward
Alexandra R. Lamb
ADAMS AND REESE LLP
701 Poydras Street
Suite 4500
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLANT


**REVERSED IN PART; AMENDED; AFFIRMED AS AMENDED**


**MAY 22, 2023**

This appeal arises out of an environmental pollution case, in which plaintiff, Hero Lands Company, L.L.C. ("Hero"), sought remediation damages for alleged environmental damage to four tracts of land, pursuant to La. R.S. 30:29 (also referred to as Act 312), as well as damages for private causes of action, from Chevron U.S.A., Inc. ("Chevron") and other defendants. After Chevron entered a limited admission of liability for environmental damage as to three of the four tracts of land, pursuant to La. R.S. 30:29(C), Hero's remaining claims against Chevron proceeded to trial, at which Hero was ultimately unsuccessful in establishing Chevron's liability for any further environmental damage or private damages. After the trial on the merits, Hero filed a motion to fix attorney fees and costs pursuant to La. R.S. 30:29(E), which specifically authorizes the recovery of costs "attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage" in accordance with Act 312. The trial court's March 15, 2022 judgment granted, in part, Hero's motion to fix attorney

fees and costs for work performed relating to the establishment of environmental damage, pursuant to La. R.S. 30:29(E)(1), and relating to Hero's private damages claims.

Chevron now appeals the trial court's judgment, arguing that the trial court erred in failing to limit its award of attorney fees and costs in accordance with La. R.S. 30:29(E). Specifically, Chevron appeals the award of fees and costs incurred by Hero in its unsuccessful pursuit of private damages claims, and those incurred by Hero in pursuit of claims against co-defendants who either settled or were dismissed. In answer to the appeal, Hero argues that the trial court erred in determining, applying, and calculating certain reductions to the attorney fees and costs Hero sought for the work performed in this litigation.

Based on our review of the record, in light of the applicable provisions of La. R.S. 30:29 and recent jurisprudence interpreting and applying those provisions, we find the trial court erred in awarding fees and costs attributable to Hero's pursuit of private damage claims, outside the scope of Act 312. Consequently, we reverse the trial court's judgment to the extent it awarded Hero fees and costs for work performed in pursuit of private damages claims at trial, and we amend the trial court's award by excising the fees and costs incurred during and after the two-week trial that began on April 26, 2021. In addition, we maintain the trial court's further reductions to the award of fees and costs, but we apply the deductions in a sequential manner rather than by 35% and 30% respectively.

2

Thus, for the reasons that follow, we reverse, in part, the trial court's March 15, 2022 judgment, amend the trial court's award of fees and costs, and affirm as amended.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This Court provided a detailed factual and procedural history of the underlying environmental pollution case in the prior, related appeal, *Hero Lands Co., L.L.C. v. Chevron, U.S.A., Inc. et al.*, 22-0224, pp. 1-7 (La. App. 4 Cir. 3/7/23), -- So.3d --, --, 2023 WL 2385145 ("*Hero I*"). As discussed in *Hero I*, in March 2018, Hero filed a petition for damages against Chevron, and several other defendants, seeking remediation damages for environmental damage to four certain tracts of land, as provided for by Act 312. Hero also alleged private causes of action, outside the scope of Act 312, for which it sought private damages.

After more than two years of litigation, on July 29, 2020, Chevron entered a limited admission of liability as to three of the four tracts of land, pursuant to La. R.S. 30:29(C), thereby admitting responsibility for environmental damage on those tracts of land but not for any claims of private damages. In accordance with La. R.S. 30:29(C), Chevron's limited admission of liability for environmental damage was referred to the Louisiana Department of Natural Resources ("LDNR") for administrative proceedings to develop of a "most feasible plan" ("MFP") for remediation of the environmental damage to which Chevron admitted responsibility.

For several months after the referral of Chevron's limited admission to the LDNR, the parties followed statutory procedures for the development of the MFP, including the submission of a proposal by Chevron, a response by Hero, responses to further inquiries from the LDNR, and a public hearing before the LDNR. In December 2020, the parties participated in a five-day public, evidentiary hearing, at which the LDNR heard testimony of eight witnesses. After the hearing, both parties filed post-hearing briefs, oppositions, and supplemental briefs. On April 7, 2021, the LDNR submitted to the trial court the proposed MFP and written reasons as required by La. R.S. 30:29(C)(2). The MFP addresses the remediation of the environmental damage only to the three tracts of land to which Chevron admitted liability. As of the submission of this appeal, the trial court had not approved and adopted a final MFP.[1]

On April 26, 2021, the case proceeded to a jury trial on Hero's remaining claims—the claims for private damages on the three tracts of land to which Chevron admitted liability for environmental damage, and the claims for remediation damages and private damages on the fourth tract of land (the "Northwest tract"). At the conclusion of the two-week trial, the jury rendered a unanimous verdict in favor of Chevron, finding no liability for environmental damage on the Northwest tract and no liability for Hero's private damages claims on any of the four tracts of land.

---

[1] On April 21, 2023, a subsequent appeal, 2023-CA-0269, was lodged in this Court. In that pending appeal, Hero appeals the trial court's October 24, 2022 judgment adopting the LDNR's MFP.

After the trial, Hero filed a motion to fix attorney fees and costs pursuant to La. R.S. 30:29(E), the provision of Act 312 that authorizes an award of "all costs attributable to providing that portion of the evidence that directly relates to the establishment of environmental damage, including, but not limited to, . . . reasonable attorney fees incurred in the trial court and the department [LDNR]." La. R.S. 30:29(E)(1). In its motion, Hero sought attorney fees and costs encompassing the entirety of litigation and LDNR proceedings, from the filing of the petition through the two-week trial and post-trial motion practice. In total, Hero sought to recover $6,622,285.75 in attorney fees and $1,064,195.40 in costs.

In response, Chevron argued that Hero was not entitled to any attorney fees or costs related to the private damages claims pursued at trial; appellate costs; claims against other defendants and pursuit of its fee award. In addition, Chevron argued for a reduction of certain attorneys' hourly rates and reductions for the firms' billing techniques. According to those parameters, Chevron calculated the attorney fees and costs incurred by Hero to be no more than $1,078,643.59 in attorney fees and $510,458.96 in costs.

Following an evidentiary hearing and post-hearing briefing on the motion to fix attorney fees and costs, the trial court rendered its March 15, 2022 judgment and issued reasons for judgment. The trial court rendered judgment, in pertinent part, as follows:

- Granted, in part, the motion to fix attorney fees and costs in favor of Hero and against Chevron, for the work performed and costs incurred, for the three tracts of land to which Chevron admitted liability, relating to the

5

establishment of environmental damage, pursuant to La. R.S. 30:29(E)(1), and the pursuit of private damage claims at trial;

- Denied, in part, the motion to fix attorney fees and costs in favor of Chevron and against Hero, denying Hero's request for fees and costs for the work performed and costs incurred, for the Northwest tract, relating to the establishment of environmental damage, pursuant to La. R.S. 30:29(E)(1), and pursuit of private damage claims;

- Reduced the hourly rates of each of ten individual counsel for Hero, having found the hourly rates of more than $400 submitted by each of those ten attorneys to be unreasonable;

- Used the reasonable hourly fee rates set by the trial court and the hours submitted by Hero to calculate the total award of attorney fees to be $5,486,258, and total costs to be $1,064,195.40, subject to certain reductions ordered by the trial court;

- Reduced the total amount of attorney fees by 35%, reflecting a 25% reduction for Hero's lack of success on claims for the Northwest tract, and a 10% reduction for the method of time keeping, block billing, mock trials, and fees that the trial court deemed unwarranted;

- Reduced the total costs by 30%, reflecting a 25% reduction for Hero's lack of success on claims for the Northwest tract, and a 5% reduction for excessive costs for experts, research, and other costs the trial court deemed unwarranted;

- Based upon the trial court's reductions to the total award, ordered Chevron to pay to Hero the total sum of $3,566,067.70 in attorney fees and $744,936.78 in costs; and

- Decreed that the judgment reflects an interim award of attorney fees and reserved Hero's rights to seek future claims for ongoing attorney fees and costs related to the production of a final plan of remediation for the environmental damage to which Chevron admitted liability.

Thereafter, Chevron timely filed this appeal of the trial court's March 15, 2022 judgment awarding attorney fees and costs to Hero. Hero also filed an answer to the appeal.

## DISCUSSION

Chevron and Hero each respectively argues that the trial court erred in its determination of the award of attorney fees and costs. First, we address Chevron's appeal, arguing that the trial court erred by awarding attorney fees and costs beyond the scope of the applicable statutory provision. Then, we turn to Hero's arguments that the trial court abused its discretion in its determination of the reasonableness of hourly rates and its reductions to the award of attorney fees and costs.

*Chevron's appeal*

Chevron argues that the trial court erred by failing to limit its award of attorney fees and costs in accordance with the specific language of La. R.S. 30:29(E) that provides for the recovery of the "costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage." Specifically, Chevron asserts that the trial court erred in two respects: awarding fees and costs incurred by Hero in its unsuccessful pursuit of private damages claims at trial and on appeal; and awarding fees and costs incurred by Hero in pursuit of claims against other defendants.

In consideration of Chevron's arguments, we begin with the language of the statute authorizing the recovery of attorney fees. "As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract." *Bd. of Sup'rs of Louisiana State Univ. v. Boudreaux's Tire & Auto Repair, L.L.C.*, 13-0444, p. 9 (La. App. 4 Cir. 3/5/14), 133 So.3d 1262, 1269

7

(quoting *Langley v. Petro Star Corp. of La.*, 01-0198, p. 3 (La. 6/29/01), 792 So.2d 721, 723).

In an action seeking remediation of environmental damage, attorney fees and costs are statutorily authorized by La. R.S. 30:29(E)(1), which provides as follows:

> E.(1) In any civil action in which a party is responsible for damages or payments for the evaluation or remediation of environmental damage, a party providing evidence, in whole or in part, upon which the judgment is based shall be entitled to recover from the party or parties admitting responsibility or the party or parties found legally responsible by the court, in addition to any other amounts to which the party may be entitled, all costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage, including, but not limited to, expert witness fees, environmental evaluation, investigation, and testing, the cost of developing a plan of remediation, and reasonable attorney fees incurred in the trial court and the department.

Chevron argues that the recoverable costs and fees authorized under this provision must be considered within the broader context of the legislative purpose in enacting Act 312, as stated within La. R.S. 30:29(A), in pertinent part, as follows:

> The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources and the environment of the state, including water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest. To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation.

Chevron argues that the stated purpose in La. R.S. 30:29(A) and the language used throughout the statute focus only on the duty to protect the environment and ensure the remediation of environmental damage, rather than providing for private damages to landowners that are not dedicated to the remediation of environmental

damage. Therefore, Chevron argues that the fees and costs allowed under Act 312, specifically La. R.S. 30:29(E)(1), may only be awarded to the extent that a party either admits responsibility, or is found legally responsible by the court, for remediation of environmental damage. In this case, because Chevron was found not liable at trial for any environmental damage to the Northwest tract, Chevron asserts that the award of attorney fees and costs must be limited to Hero's work performed in relation to Chevron's limited admission to liability for environmental damage on the three tracts of land and the proceedings in the LDNR to develop the MFP. In support of this argument, Chevron relies upon the Third Circuit's recent opinion in *Sweet Lake Land & Oil Co., LLC v. Oleum Operating Co., L.C.*, 21-0169 (La. App. 3 Cir. 12/7/22), 354 So.3d 740, *writ denied*, 23-00034 (La. 3/7/23), 357 So.3d 349 ("*Sweet Lake III*"). We turn now to discuss the *Sweet Lake* case.

The *Sweet Lake* opinions

In its original appellate brief, Chevron argued that the trial court relied heavily, and incorrectly, on the analysis and conclusions of the Third Circuit in *Sweet Lake Land & Oil Co., LLC v. Oleum Operating Co., L.C.*, 21-169 (La. App. 3 Cir. 12/1/21), unpub., -- So.3d --, 2021 WL 5630004 ("*Sweet Lake I*"), which was pending review before the Louisiana Supreme Court at the time the trial court in this case rendered its judgment. However, since the submission of this appeal, the Louisiana Supreme Court granted writs and remanded the matter to the Third Circuit with orders, discussed below, in *Sweet Lake Land & Oil Co., LLC V. Oleum Operating Co., L.C.*, 22-00497 (La. 9/20/22), 345 So.3d 1022 ("*Sweet Lake*

9

*II*"). Thereafter, the Third Circuit rendered a new opinion, *Sweet Lake III*, upon which Chevron relies in support of its appeal. In consideration of the reliance of the trial court and the parties upon the *Sweet Lake* opinions, we first review the trial court's application of the reasoning in *Sweet Lake I*, and then discuss how the Louisiana Supreme Court's remand order and the Third Circuit's most recent opinion of *Sweet Lake III* impact the trial court's judgment and guide this Court's decision.

In its reasons for judgment in this case, the trial court summarized the facts, jury verdict, and judgment awarding attorney fees and costs in *Sweet Lake I*, as follows:

> In Sweet Lake, the plaintiff, Sweet Lake Land and Oil Company, L.L.C. sought to recover environmental damages and private damages from the defendants in that case. The case was tried before a jury which found defendant, BP, solely responsible for the environmental damages on the property. However, the jury rejected the private damage claims of the plaintiff. Because the trial court deemed the plaintiff to be successful as to its remediation claim on the property, the court awarded all attorney fees and costs pursuant to La. R.S. 30:29 to the plaintiff, despite the fact they were not successful at all as to their private damage claim relating to that same tract of land.

As noted by the trial court, the Third Circuit addressed the legislative history and purpose behind La. R.S. 30:29, in applying the statute to the facts of that case and, ultimately, affirming the lower court's judgment. The trial court reviewed the Third Circuit's analysis and interpretation of La. R.S. 30:29, then relied upon that reasoning in its own application of the statute to the facts of this case, as follows:

> The Third Circuit stated:
>
> "While the parties present compelling statutory construction arguments, the parsing of the legislature's phraseology

10

overlooks the reality of the presentation of this case, which necessarily involves remediation arising under La. R.S. 30:29 as well as claims outside of that regulatory context, i.e., Sweet Lake's tort and contract claims disallowed by the jury, but for which there has been no final judgment rendered by the trial court. Although the conduct of any given defendant may result in damages above or even separate from the statutorily required remediation, the development and presentation of that evidence is necessarily attributable to 'producing evidence that directly relates to the establishment of environmental damage.' Sweet Lake successfully presented a case that resulted in referral for the La. R.S. 30:29 process as well as significant contractual damages against two of its operators. The totality of Sweet Lake's recovery stemmed from the underlying damage, which was established by BP's confession as well as the record evidence on the issue."

\* \* \*

It is clear from the reading of Sweet Lake that because the plaintiff had prevailed on the environmental remediation claim, as to the tract of land involved in that case, the plaintiff was entitled to a full recovery of their fees and costs even though they were unsuccessful as to the private damage claim on that same tract. The Court rejected BP's argument for a reduction in fees and costs even though BP prevailed on the private damage claim issues at trial.

Using Sweet Lake as a guide, Hero Lands is entitled to recover all its fees and costs for the three tracts of land that Chevron made a limited admission of liability for. Even though Hero Lands did not prevail on those three tracts of land regarding their private damages claims, nevertheless, the litigation instituted by them ultimately was successful in obtaining Chevron's responsibility for the remediation of the environmental damages that those tracts sustained in accordance with Act 312. It is consistent with the legislative history and purpose behind the law in promoting the health, safety, and welfare of the people.

\* \* \*

In conclusion, this Court finds that Hero Lands is entitled to receive reasonable attorney fees and costs regarding their claims for all work performed in establishing environmental damage on the three tracts of land including their private damage claims.

In consideration of the Third Circuit's pertinent analysis of an Act 312 case in *Sweet Lake I*, we find the trial court's use of that analysis and reasoning to be reasonable, at the time this judgment was rendered. The trial court reasonably followed the guidance from the Third Circuit to determine that the scope of recoverable fees and costs in this case for work performed in establishing environmental damage included Hero's pursuit of private damage claims on the three tracts of land at trial. However, after the trial court rendered its judgment in this case, but prior to the submission of this appeal, the Louisiana Supreme Court granted, in part, BP's writ in *Sweet Lake I* and remanded the matter to the Third Circuit with orders "to determine what costs and fees were attributable to 'producing that portion of the evidence that directly relates to the establishment of environmental damage.' La. R.S. 30:29(E)."[2] *Sweet Lake II*, 22-00497, p. 1, 345 So.3d at 1023.

On remand, in an opinion released while this appeal was pending, the Third Circuit reconsidered the scope of recoverable fees and costs under La. R.S. 30:29 "with an eye toward those attributable to the limited purpose of establishing 'environmental damage.'" *Sweet Lake III*, 21-169, p. 4, 354 So.3d at 744. Looking to the stated purpose of the statute as provided in La. R.S. 30:29(A), the Third Circuit found, "[b]y its own terms, La. R.S. 30:29 is targeted to the legislatively provided remediation measures arising from activities subject to LDNR's

---

[2] The Louisiana Supreme Court also remanded to the Third Circuit to "reconsider the finding of solidary liability, when the attorney fees and costs were expressly authorized by statute against one defendant, but not by the others." *Sweet Lake II*, 22-00497, p. 1, 345 So.3d at 1023.

jurisdiction." *Id*., p. 5, 354 So.3d at 745. In light of the statutory purpose, and in consideration of the Louisiana Supreme Court's directive, the Third Circuit concluded that the trial court's award of *all* attorney fees, expert fees, and costs incurred by Sweet Lake, which encompassed fees and costs attributable to the unsuccessful pursuit of private damage claims, was in error. *Id*., p. 5, 354 So.3d at 745. "Rather, that award must be limited to those fees and costs incurred in the trial court and in the LDNR in pursuit of establishing environmental damages and the remediation thereof prescribed by La. R.S. 30:29." *Id*., p. 6, 354 So.3d at 745. Consequently, the Third Circuit reversed the trial court's judgment to the extent it cast judgment against BP for fees and costs incurred for pursuit of private damage claims, and "amend[ed] the trial court's award of fees and costs to those incurred by Sweet Lake in its successful pursuit of the establishment of environmental damages and the remediation of that damage." *Id*., p. 6, 354 So.3d at 745. Thereafter, the Louisiana Supreme Court denied writs taken from *Sweet Lake III*. 23-00034 (La. 3/7/23), 357 So.3d 349.

Recoverable Fees and Costs—Private damage claims

Upon review of this case, in light of the directive from the Louisiana Supreme Court in *Sweet Lake II* and the Third Circuit's reasoning and conclusion in *Sweet Lake III*, we arrive at the same conclusion in this case—that the trial court's award to Hero for fees and costs incurred for prosecution of private claims outside the establishment of environmental damage and statutory remediation damages available under La. R.S. 30:29 was in error. *See Sweet Lake III*, 21-169,

13

p. 5, 354 So.3d at 745. Thus, this trial court erred in its judgment insofar as it determined that the recoverable attorney fees and costs to which Hero is entitled, under La. R.S. 30:29, included work performed in Hero's pursuit of their private damage claims for the three tracts of land at trial. We now consider how that affects the award of attorney fees and costs in this case.

Chevron, in its original and supplemental briefs to this Court has consistently argued for this Court to render judgment on the record, excising all fees and costs that were not directly related to the establishment of environmental damage through Chevron's limited admission of liability on the three tracts of land. At the hearing on the motion to fix attorney fees and costs, Chevron submitted its "line-by-line analysis" of Hero's billing records, by which Chevron claims to identify each entry that is beyond the scope of Act 312 and relates only to Hero's private damage claims.[3] Chevron further argues that once it entered that limited admission of liability on July 29, 2020, none of the work performed in the ensuing 10 months from the limited admission through the trial verdict and appellate work can possibly relate to the "establishment of environmental damage" in accordance with La. R.S. 30:29, as interpreted in *Sweet Lake III*.

From our review of the record of this case, and in consideration of the language of La. R.S. 30:29(E), we agree that Hero succeeded in establishing environmental damage on the three tracts of land as a result of Chevron's limited

---

[3] Chevron submitted the affidavit of Ralph A. Litolff, Jr., a certified public accountant, who attested that Chevron retained him to examine bills submitted by the firms representing Hero and to perform "certain calculations at the direction of Chevron's counsel of record." Chevron submitted Mr. Litolff's line-by-line examination and categorization of the bills and his "Calculation of Legal Fee Hours Based on Certain Reductions" as its line-by-line analysis.

14

admission of liability. But, Hero's work in "producing that portion of the evidence that directly relates to the establishment of environmental damage . . . in the trial court and the department [LDNR]" did not end on July 29, 2020, when Chevron made its limited admission of liability as to the three tracts of land. By entering the limited admission of liability, Chevron triggered procedures within Act 312 for referring the matter to the LDNR for further proceedings. La. R.S. 30:29(C) outlines the required procedures including: the development and submission a plan for evaluation and remediation by the admitting party; the time for any party to respond to the plan; a public hearing on the plan; the submission of evidence to LDNR; the LDNR's written reasons for the proposed MFP to be submitted to the trial court; the submission of the proposed MFP to the trial court for final approval; and the trial court's adoption and continuing jurisdiction over the MFP through completion of remediation. Thus, the date on which a party makes an admission of liability for environmental damage does not mark an end to the proceedings in the trial court and the LDNR in pursuit of the establishment of environmental damage and remediation of that damage.[4]

---

[4] We note the language of La. R.S. 30:29(C)(2)(b), in particular, indicates the ongoing, legal nature of the environmental damage and remediation proceedings within the LDNR, beyond the date when a party enters an admission of liability. La. R.S. 30:29(C)(2)(b) provides in pertinent part:

> Except as otherwise provided for in this Section, from the date the party or parties, who admit responsibility or whom the court finds legally responsible for the damage, submit a plan to the department until after the department has filed with the court the approved feasible plan for the evaluation or remediation of the environmental damage, no party to the litigation, either directly or indirectly, shall have ex parte communication with any employee, contractor, or representative of the department regarding the formation of the feasible plan or an agency providing comments to the department regarding the formation of the feasible plan.

In addition, we find that the language of La. R.S. 30:29(E) allows for recovery of costs encompassing all of the work involved in the LDNR proceedings, which all directly relate to the establishment of environmental damage. Therefore, those costs include, but are not limited to "expert witness fees, environmental evaluation, investigation, and testing, the cost of developing a plan of remediation, and reasonable attorney fees incurred in the trial court and the department [LDNR]."

In this case, when Chevron filed its limited admission of liability for environmental damage on the three tracts of land, the procedures outlined in La. R.S. 30:29(C) were triggered, and the LDNR proceedings to establish the environmental damage and the plan for remediation commenced. The parties participated in five days of LDNR hearings, in December 2020, that involved the submission of evidence and the testimony of eight witnesses. Thereafter, the parties submitted post-hearing briefs and continued to make arguments to the LDNR regarding the plan for remediation. On April 7, 2021, the LDNR filed the proposed MFP with the trial court.

After the LDNR issued the proposed MFP, the trial commenced on April 26, 2021. The jury rendered its verdict, in favor of Chevron, on May 7, 2021, and the trial court signed the judgment on that verdict on May 14, 20221. The billing records submitted in support of Hero's motion to fix attorney fees include work performed through May 31, 2021.

Based on our review of the billing records submitted by Hero and the "line-by-line" analysis submitted by Chevron, we do not find Chevron's "line-by-line" analysis to be an accurate or fair calculation of attorney fees and costs incurred by Hero in the trial court and in the LDNR in pursuit of establishing environmental damages and the remediation thereof, in accordance with by La. R.S. 30:29.

In our consideration of this record, specifically with an eye toward determining the costs and fees attributable to the work performed by Hero in "producing that portion of the evidence that directly relates to the establishment of environmental damage" in both the trial court and the LDNR proceedings,[5] we conclude that the fees and costs incurred by Hero from April 26, 2021, the date that trial began, through May 31, 2021, the last date included in the submitted billing records, must be excluded from the total award. We find that any further line item review of each billing record and every cost statement, to determine the work performed solely in "producing that portion of the evidence that directly relates to the establishment of environmental damage," would be impractical and lead to confusion and dispute.

<u>Recoverable Fees and Costs—Claims against other defendants</u>

Finally, Chevron argues that the trial court erred in awarding fees and costs incurred by Hero in pursuit of claims against other defendants, who settled or were dismissed. But, in consideration that Chevron was the only party to admit liability for environmental damage and be held responsible for remediation under La. R.S.

---

[5] La. R.S. 30:29(E)(1).

30:29, we find that Chevron alone is responsible for the fees and costs recoverable under La. R.S. 30:29(E). Here again, we find guidance from the Louisiana Supreme Court's directive to the Third Circuit and the resulting decision in *Sweet Lake III*.

In the case of *Sweet Lake*, plaintiff, Sweet Lake, proceeded to trial against three defendants—BP, Oleum Operating Co., L.C. ("Oleum"), and AKSM—but, the jury returned a verdict finding only BP liable for remediation of the environmental damage. Subsequently, Oleum and AKSM were found liable to Sweet Lake for private breach of contract damages.[6] Three years later, the final MFP had not yet been judicially approved or implemented, but, considering the additional mounting costs of that remediation process, Sweet Lake filed a motion to assess fees and costs pursuant to La. R.S. 30:29(E). The trial court's judgment awarding fees and costs in favor of Sweet Lake, pursuant to La. R.S. 30:29, was rendered against BP, Oleum, and AKSM *in solido*.

In *Sweet Lake I*, BP argued, in part, that the trial court erred in finding the three defendants liable *in solido* under La. R.S. 30:29, but the Third Circuit maintained the trial court's finding of solidary liability, reasoning as follows:

> We leave that determination [of solidary liability] undisturbed as each party shared liability for at least a baseline of remediation in this case. *See* La. Civ. Code art. 1794. As stated above, the award of fees and costs all originated in the claim that centered on that remediation.

> Furthermore, while BP may have been held responsible for regulatory remediation under La. R.S. 30:29, Oleum and AKSM assumed not

---

[6] As explained in *Sweet Lake I*, Sweet Lake appealed from the partial final judgment dismissing the contract claims against Oleum and AKSM, and, in an earlier appeal, the Third Circuit concluded the jury erred in rejecting the breach of contract claims against Oleum and AKSM and remanded the matter for a bench trial on the damages. 21-169, p. 4, -- So.3d at --, *10.

only a remediation obligation by operation of law, but one at a higher level of contract. This alternative source of obligation is of no moment as La. Civ.Code art. 1797 provides that "[a]n obligation may be solidary though it derives from a different source for each obligor."

*Sweet Lake I*, 21-169, p. 49, -- So.3d at --, *21.

The Louisiana Supreme Court granted writs on this issue as well, remanding the matter to the Third Circuit "to reconsider the finding of solidary liability, when the attorney fees and costs were expressly authorized by statute against one defendant, but not by others." *Sweet Lake II*, 22-00497, p. 1, 345 So.3d at 1023. On remand, the Third Circuit reconsidered the solidary liability of defendants, in light of the scope of recoverable fees and costs to which a party is entitled under La. R.S. 30:29(E), and concluded:

[I]t is now apparent all available costs must arise due to the remedy provided by La. R.S. 30:29. Thus, as BP has been found responsible for the entirety of the remediation available under La. R.S. 30:29, it follows that BP, alone, must be cast in judgment for the fees and costs attributable to the environmental damage underlying the remedy of La. R.S. 30:29(E).

*Sweet Lake III*, 21-169, pp. 12-13, 354 So.3d at 748. Moreover, the Third Circuit considered the purpose of an award of attorney fees, as recognized by Louisiana jurisprudence. "As an award of an attorney fee is a type of penalty, such an award is meant to discourage a type of behavior rather than make an injured party whole." *Id*., p. 14, 354 So.3d at 749 (citing *Langley*, 01-0198, p. 3, 792 So.2d at 723). In that case, BP was determined to be the sole party responsible for remediation of environmental damage under La. R.S. 30:29, and, thus, the award of attorney fees and costs related to that finding "acts as a penalty for BP's behavior." *Sweet Lake III*, 21-169, p. 15, 354 So.3d at 749.

19

In this case, Chevron is the only party in this case to admit liability and responsibility for remediation of environmental damage under La. R.S. 30:29. Consequently, Chevron is solely responsible for the award of fees and costs to which Hero is entitled to recover under La. R.S. 30:29(E). Chevron, alone, admitted its role in the environmental damage of three tracts of land, and the award of attorney fees, pursuant to La. R.S. 30:29(E), is meant to discourage Chevron from further acts causing damaging to the environment. Therefore, we find no merit in Chevron's argument that the scope of recoverable fees and costs cannot include Hero's pursuit of claims of environmental damage against other defendants.

*Hero's answer to the appeal*

In answer to the appeal, Hero argues that the trial court erred by reducing Hero's attorneys' recoverable rates in a manner inconsistent with Act 312; not applying a multiplier to its calculation of recoverable attorney fees to account for the contingent risk; calculating a 25% reduction in attorney fees and cost based on Hero's failure to recover environmental damage to the Northwest tract; applying a 10% reduction to Hero's attorney fees based on method of billing; and in its application of the percentage reductions, resulting in double-reductions. Based on our review, as follows, we find no abuse of discretion in the trial court's determination of reasonable rates or the reductions to the fees and costs. We do, however, find that the trial court erred in the manner of applying the reductions, which should be applied in a sequential manner.

In reviewing a trial court's determination of the reasonableness of attorney fees, the Louisiana Supreme Court looks to whether the trial court has taken into consideration the following factors:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Rivet v. State, Dept. of Transp. and Development*, 96-0145, pp. 11-12 (La. 9/5/96), 680 So.2d 1154, 1161 (citing *State, DOTD v. Williamson*, 597 So.2d 439, 442 (La. 1992)); *see also*, Rule 1.5(a) of the Rules of Professional Conduct. Our Court has further explained our appellate review of a determination of an attorney fee as follows:

> [W]e first ensure that the trial judge adequately considered the ten factors and then, if we find that they were adequately considered, we review the award under an abuse-of-discretion standard. Importantly, we decline to modify the award on appeal unless we are satisfied that the standard is met. Our deference to the trial judge in these matters is a recognition of the trial judge's greater familiarity with the issues involved in the overall case and with the specific value of the services rendered by the attorney whose fee is under consideration.

*Billieson v. City of New Orleans*, 15-0858, p. 6 (La. App. 4 Cir. 1/27/16), 186 So.3d 786, 790; *See Covington v. McNeese State Univ.*, 12-2182, p. 11 (La. 5/7/13), 118 So.3d 343, 351 ("[T]he role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier-of-fact."); *Bd. of Sup'rs of Louisiana State Univ. v. Dixie Brewing Co., Inc.*, 15-1053, p. 13 (La. App. 4 Cir. 9/1/16), 200 So.3d 977, 986

(holding that the trial court's award of attorney fees will not be reversed on appeal absent a clear abuse of the trial court's sound discretion).

Hero argues that the trial court misapplied the *Rivet* factors for determining the reasonableness of the attorney fees. In its brief, Hero asserts that the trial court abused its discretion by failing to consider the time and labor required by this case when making reductions; the customary rate of the locality by looking to the rates charged by Chevron's attorneys; and the risk undertaken by taking this case on a contingency basis. From our review of the trial court's reasons for judgment, which provide a detailed consideration of the factors for determining the reasonableness of attorney fees, we find no merit in Hero's arguments.

In reviewing a trial court's determination of a reasonable hourly rate, the Louisiana Supreme Court stated as follows:

> A reasonable hourly rate is to be determined "according to the prevailing market rates in the relevant community" for attorneys of similar experience in similar cases. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *see also Alberti v. Klevenhagen*, 896 F.2d 927 (5th Cir. 1990). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895, n.11, 104 S.Ct. 1541. A rate determined in this way is normally deemed reasonable, and is considered to be "the prevailing market rate." *Id.* To be sure, an award of attorney fees should be high enough to "facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). We reiterate that, in determining the amount of reasonable attorney fees to award under federal fee shifting statutes, the district court is afforded considerable discretion. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

*Covington*, 12-2182, pp. 9-10, 118 So.3d at 350.

In its determination of the reasonableness of attorney fees, the trial court first addressed the hourly billing rates of ten individual counsel for Hero contested by Chevron. These ten attorneys submitted hourly rates ranging from $472.50 to $850 per hour. The trial court determined that these rates were unreasonable, ultimately reducing them to a range of $400 to $525 per hour.

In setting these amounts, the trial court discussed its consideration of each attorney's rate in light of: the relevant market—the 25th Judicial District Court in Plaquemines Parish where the case was heard; the court's own knowledge of the hourly rates billed by attorneys practicing in Plaquemines Parish; the testimony and affidavits of Hero's attorneys regarding their experience, expertise, and the work they performed; the complex nature of this Act 312 litigation; the range of legal issues and skill level required; the amount of work performed by all counsel; and the ultimate outcome for Hero, which included a satisfactory result from the limited admission of liability from Chevron but an unsuccessful result at trial. The trial court also considered Hero's argument that the reasonableness of their hourly rates should be determined by a comparison to the much higher rates charged by Chevron's attorneys in this litigation; but, the trial court reasoned that "even if the fees were exactly equal, then this Court would still have to apply the above factors cited above to determine the reasonableness of the hourly rate for this market."

Upon review of the trial court's reasons, with consideration of the record of this case, we find the trial court adequately considered the appropriate factors in

determining reasonable hourly rates, and we find no abuse of the trial court's discretion in reducing the rates of the ten individual counsel for Hero.

We turn now to the reductions of the attorney fees and costs by the trial court. First, the trial court applied a 25% reduction, from its lodestar calculation of Hero's attorney fees and costs, because Hero failed to establish liability for environmental damage as to the Northwest tract under Act 312. Thus, because Hero was unsuccessful in establishing liability for environmental damages on one out of four of the original claims (tracts of land), the trial court found it logical and reasonable to reduce the award of fees and costs by 25%. In accordance with the reasoning discussed earlier in this opinion, we agree that Hero cannot recover costs on a claim for which it did not establish liability for environmental damage, pursuant to La. R.S. 30:29(E)(1). Furthermore, we find the trial court did not abuse its discretion in applying a 25% reduction of the award in lieu of attempting to review every billing record and cost statement to determine what fees and costs would be attributable solely to Hero's work as to the Northwest tract. Accordingly, this 25% reduction will be applied to this Court's re-calculation of the lodestar, after excising the attorney fees and costs incurred during and after trial.

In regards to the trial court's further reductions of 10% to the attorney fees and 5% to the costs, we also find no abuse of discretion. The trial court based the ten percent reduction of the fees on its own review of the bills, finding several entries of block billing, logging more hours worked than hours in a day, and

insufficient, vague descriptions of the work performed. This Court has also reviewed the bills submitted by Hero and noted the same large block billing—such as, 114 hours logged by one attorney on one date, 80 hours logged by another attorney on one date—with vague, overly broad descriptions of the work performed in those blocks of time, compared to the specificity in the quarterly hour billing of other attorneys. Therefore, we find no abuse of discretion in the trial court deeming the billing methods unreasonable and reducing the attorney fees by ten percent. *See Covington*, 12-2182, p. 7, 118 So.3d at 349 ("Where the documentation is inadequate, the district court may reduce the award accordingly.").

Finally, based on our review of the billing records and the reasons provided by the trial court, we also find no abuse of discretion in the trial court's five percent reduction of costs incurred by Hero, finding the total costs billed to be unreasonable and unwarranted.

Accordingly, we affirm the trial court's reductions of the award of attorney fees and costs by 25%, as well as the additional reduction of 10% to the attorney fees and 5% to the costs. However, we agree with Hero's argument that the trial court erred by reducing the total award by the aggregate amounts of 35% and 30%, respectively. We find that the 25% reduction for the Northwest tract must be applied first, then the amounts are further reduced for the billing methods and excessive costs, respectively. Thus, the reductions should be applied sequentially.

# CONCLUSION

For the foregoing reasons, we reverse, in part, the trial court's March 15, 2022 judgment, to the extent it includes an award of fees and costs incurred by Hero for work performed in pursuit of private damages claims, outside the scope of Act 312; and, we amend the trial court's award by excising the fees and costs incurred during and after the two-week trial that began on April 26, 2021. In addition, we affirm and apply the trial court's reductions to the total award.

Accordingly, for the foregoing reasons, we hereby amend the award of attorney fees and costs in favor of Hero, and order the defendant, Chevron, to pay to Hero, the total sum of $3,098,972.66 in attorney fees and the total sum of $656,937.20 in costs.[7]

Finally, we remand to the trial court for further proceedings related to the implementation of the remediation MFP.

**REVERSED IN PART; AMENDED; AFFIRMED AS AMENDED**

---

[7] This Court excised the billed hours from April 26, 2021 through May 31, 2021, in each of the billing records submitted by the three firms representing Hero. Then, using the reasonable hourly rates set by the trial court, this Court reduced the lodestar calculated by the trial court by the following amounts: $443,081 from Fishman Haygood, L.L.P.; $414,406.38 from Jones Swanson Huddell & Daschbach, LLC; and $37,300 from Ballay, Braud & Colon, PLC. The reduced lodestar amount of $4,591,070.62 was then reduced by 25%, and, finally, this Court applied the 10% reduction to the fees. As to the costs, this Court reduced the costs by $142,178.28, for work performed during and after trial. That amount was then reduced by 25%, then further reduced by 5%.